Will the clerk please call the last case of the morning? Cases T, 05, and 05. Cases for Monskow v. Monskow. Counsel, you may proceed. May it please the court, Ms. Pilar, we're here this morning to ask this court to overturn the decision. Counsel, who are you? I'm sorry, Patrick Brooks for the appellant. We're here to ask this court to overturn the commission's decision finding no causal connection between Petitioner's injury in 2011 and his current condition of ill-being. The commission found that a fall Petitioner sustained 11 days after surgery to repair his shoulder completely broke the chain of causation between the original work injury and his current condition. To look at this question, a simple analysis, I believe, answers that, that the decision is against the manifest way to the evidence. Counsel, I'm going to direct your attention to two places in the opposing counsel's brief, and I want to ask you whether or not the evidence supports these statements. At page 20 of the appellee's brief, it's written, the surgical repair itself did not fail. Does the evidence bear that out? The evidence bears out that the doctor testified that the surgery was a success, and from the standpoint that he was able to address the conditions in the shoulder, namely, I'm sorry, this is after the fall on the deck, and the statement is made, the surgical repair itself did not fail. Is that accurate or not? You're talking after the fall? After the fall. That is incorrect, because clearly both, there's no dispute, both doctors, Dr. Burra and Dr. Lurie agree that the fall basically undid the surgery. The portion of the biceps tendon that was attached to the humerus during the original surgery became detached as a result of the fall. At page 26 of the appellee's brief, this statement appears, if there was no surgery, the subsequent rupture still would have occurred. Is there evidence in the record to support that statement? There's no evidence in the record to support that statement, because, and this gets to the crux of the question I think that has to be asked in this case, is what happened when Petitioner fell was he had a failed biceps tenodesis. You cannot have a failed biceps tenodesis absent having tenodesis surgery, so there's no way that you can have it. A tenodesis is not a body part, it's not a specific injury, it's a term that's used to describe the failure of a surgical procedure. So that goes to the whole issue on the but-for analysis when we're talking about an intervening accident, breaking the chain of causation. Because here, if you ask the question, Petitioner would not have had a failed tenodesis from the fall if he had not first had tenodesis surgery as a result of his injury. So I think that answers the but-for question. The arbitrator in his decision seemed to think, well, the Petitioner, his fall had nothing to do with his shoulder. Therefore, the but-for test breaks the chain of causation. We're not arguing certainly that the fall was a result of any issue with his shoulder. What we're arguing is that he would not have had a failed tenodesis if he had not first had tenodesis surgery from his work. So what you're saying is if the ultimate condition of ill-being is the combination of both of these events, the claimant should prevail because, as we know, it doesn't have to be the sole cause. It can be a cause or a contributing cause. That's correct. So you're saying in a nutshell? Yes, because there's no dispute in the record that the fall was a direct cause of the tenodesis failure. But it's also true that the tenodesis would not have failed but for the original surgery. So that's really in a crux, without getting into too much more detail, is what we're contending in this case. The arbitrator's decision did not take this into account. I submit it was contrary to the law. And the case law we've cited, specifically the Vogel case and also the Duntman case. The Vogel case, I believe, is most closely aligned with the facts in this case, where there the petitioner had a prior surgery that was not fully healed. He was involved in subsequent motor vehicle accidents, which then caused the fusion not to heal, which resulted in the need for additional surgery. So if I could just also briefly address the issue of penalties, we believe the arbitrator, again, erred in not awarding any penalties in this case. While it is true that the arbitrator found no causation. So how do you get penalties? That's been the theme. Right. And I know this was addressed in a prior case this morning. So, yes, there's no liability for penalties as it relates to the shoulder issue, because the arbitrator determined there was no causation. However, the record clearly shows the petitioner also had an elbow condition that was operated on in May of 2013. In the period between May of 2012 and May of 2013, the petitioner was treating both for his shoulder and for the elbow condition, the ulnar neuropathy. The record is also clear that during this period of time, respondents repeatedly delayed making payments of TTD benefits. And, in fact, in one period between early March and late April of 2013, respondents did not make any payments despite written requests by a petitioner to issue those payments. Well, if you had your druthers, you would ask us, obviously, to reverse the decision, remand it. And wouldn't that decision or that issue be taken up again in remand of the penalty? That's correct. I think we understand. All right. Thank you. Thank you, counsel. Counsel, you may respond. Thank you. May it please the court, counsel, Valerie Pyler, on behalf of the employer, ComScope. The employer respectfully requests that the decision of the Ulnar Workers' Compensation Commission, as affirmed by the Circuit Court of Will County, be affirmed in its entirety. Before turning to the merits of the case, I want to apologize to the court as the employer's brief contains improper citation to unpublished decisions issued pursuant to Supreme Court Rule 23. It was error to include these citations, and I apologize to the court and to counsel. Thank you. Addressing the merits of the case, the commission found that the petitioner's fall on July 29, 2012, constituted an intervening cause that severed the causal relationship between work injury and the condition of the petitioner's left shoulder. And counsel has correctly articulated that the standard for that analysis is the but-for standard. And generally, the court in Vogel and the court in National Frank have looked at three factors that indicate whether such a causal connection but-for situation exists, and those factors are the creation of new symptoms, the creation of a new condition of ill-being, and the need for a new medical treatment. And you would see from those factors in these cases, in this case, that all of those factors were, in fact, present. And I think the most important point based upon the court's questions is to talk about new pathology. And I understand that there's the term failed tenodesis, but that is not analogous, as counsel would make it, to the arthrodesis in Vogel. The failed tenodesis, if you closely examine the records of both Dr. Burra and Dr. Atlery, are used interchangeably with the concept of a ruptured tendon. So it is not a cause-effect description when they use that. And, in fact, Dr. Atlery, in one of his reports dated March 28, 2014, describes the new situation as nothing more than a recurrent left shoulder biceps tendon. So a failed tenodesis is nothing more than the fact that the biceps tendon has broken loose. And so I think when you understand the concept of a failed tenodesis in that way, you understand that this is, in fact, a new injury. It undid the surgical repair, devolved it, right? It did not undo it in the sense that it did in Vogel, because the pin is still present, the actual surgical situation. And the difference between this case and Vogel is that you cannot have an arthrodesis without the original surgery. Dr. Burra testified that the client had developed a Popeye deformity, and he stated this, that part or all of the tendon that he had previously repaired slipped. So isn't that an undoing of the tenodesis? It is an undoing of the tenodesis, but no doctor testified that that tendon would not have ruptured but for that initial surgery. Well, and that's completely different than what you state in your brief, which is, quote, if there was no surgery, the subsequent rupture still would have occurred. That is an affirmative statement that I can't find supported by any evidence in the record. Well, I believe Dr. Atler testified in essence to that when he said that he... Well, in essence, there was testimony that this type of complication is a known complication even without injury. But was there affirmative testimony that this type of...that this rupture would have occurred if there was no surgery? Let me just read to you again your statement in your brief. If there was no surgery, the subsequent rupture still would have occurred. Which doctor said that? I believe Dr. Atler, he said that, although not in those exact words, I will concede that. When he said, when he authored his first report that explicitly addressed the actual fall, he had not been asked about the impact of the fall on the causal connection opinion. When he said that that fall was the sole cause of that rupture, and he does call it a rupture, he does not call it a failed tendinitis in that report. So I believe that's where that statement can be derived from because... Who performed the surgery? Dr. Baruch. Okay. But Dr. Atler is saying that, regardless, even if there was no surgery, it still would have ruptured. So why perform the surgery? I'm sorry. I didn't understand that question. You're saying that Dr. Lurie testified that that rupture still would have occurred, regardless if the surgery had taken place, right? Why perform the surgery in the first place? The first surgery? Yes. Well, the first surgery was performed because it was a labral tear, and Dr. Lurie... The tenodesis. Well, Dr. Baruch testified that he had to detach, because the labrum and the biceps tendon are all one piece, he had to detach biceps from the labrum and pin it in order to complete the labral tear. He testified there were four procedures in that first surgery, and that he had to separate those, and that's why he pinned it. And Dr. Lurie said that the only reason for that rupture, which is also sometimes called failed tenodesis, was that fall, which was a significant fall. He fell on his outstretched arm. That's the kind, had he not had that surgery, none of us would be surprised that he ruptured the biceps tendon doing that fall. But that's a completely different concept than to say no one would have been surprised that it would have happened for the fall. Would that statement that you say, that you put in your brief, that if there was no surgery, the subsequent rupture still would have occurred? Well, again, I mean, that's what Dr. Lurie is saying, based upon his sequence of events, that the, again, he calls it a re-rupture, not a failed tenodesis, and he states that it is solely attributable to that fall. So there is no piece of surgery that is in that opinion. It's a re-rupture, and it's attributed to the fall. The surgery is not found anywhere in that sequence of opinions rendered by Dr. Atler. Dr. Lurie. With respect to the issue of penalties, I would point out that for the specific period of time that counsel referenced, which was approximately March through April of 2013, Dr. Atler found the petition to be able to perform full duty during that time. And obviously temporary total disability benefits are only due, irrespective of MMI, if you are, in fact, disabled or more. The employer, therefore, had an adequate legal basis to deny payment of those benefits. And the fact that the payment was then subsequently made is irrespective of the fact that there was no liability, because if they relied on Dr. Atler's opinion, the petitioner could work at full duty. Thank you. Thank you, counsel. Counsel, you may reply. Yes, I just want to briefly address the issue of what Justice Harris was bringing up. The counsel mentioned the term that Dr. Lurie was talking about, a re-rupture. That implies that there was a previous rupture of the biceps tendon, but the record does not show any prior biceps tendon rupture. Dr. Burra testified about the operation that he originally performed in reviewing the MRI showing fraying of the biceps tendon. The petitioner was diagnosed originally with biceps tendonitis, not a ruptured biceps tendon. So there's no evidence in the record that there was a prior biceps tendon rupture. The only rupture occurred, if we can call it that, is when the biceps tenodesis failed 11 days after the fall. Thank you. Thank you, counsel. Both of the arguments in this matter have been taken under advisement. The written disposition shall issue. The court will stand in recess subject to call.